## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RANDALL DURR,

      Petitioner,                  Civil No. 2:12-CV-14691
                                   HONORABLE VICTORIA A. ROBERTS
v.                           UNITED STATES DISTRICT JUDGE

DUNCAN MCLAREN,

      Respondent.

_____/

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Randall Durr, ("Petitioner"), confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for second-degree murder, M.C.L.A. § 750.317, and possession of a firearm during the commission of a felony (felony-firearm), M.C.L.A. § 750.227b.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

A jury convicted Petitioner in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

This appeal arises out of the shooting death of Khali Badawi, who was the

proprietor of a Dollar Tree and More store. On November 13, 2005, Badawi was shot three times, once in the neck, once in the chest and once in the back. His body was discovered inside the store, inside a glass booth. After initial photographs and evidence was gathered at the scene, the case was assigned to Detroit Police Officer Karen Miller.

Miller began questioning people in the neighborhood, and eventually after "tips had come in," Miller sought defendant who had been named by a neighbor as someone who had confessed to shooting the victim. Defendant was 16 at the time, so Miller made contact with defendant's mother and arranged a meeting with defendant and his mother the next day at the juvenile courthouse. Defendant's mother arrived at the meeting the next day, but defendant refused to come inside and was walking up and down the street. Miller then went outside and brought the defendant inside the courthouse. At this time, Miller stated that she arrested defendant on "suspicion of homicide" and further stated the she "needed to interrogate him and ask him questions."

*People v. Durr,* No. 277877, 2008 WL 3851561 * 1 (Mich.Ct.App. August 19, 2008).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 483 Mich. 1016, 765 N.W.2d 309 (2009).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Durr,* No. 06-000099-01 (Wayne County Cir. Ct. July 27, 2010). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Durr,* No. 301390 (Mich.Ct.App. February 10, 2011); *lv. den.* 492 Mich. 864, 819 N.W.2d 883 (2012).

Petitioner now seeks a writ of habeas corpus on the following grounds: (1) Petitioner was denied his constitutional right to a public trial, (2) Petitioner was denied his constitutional right to the effective assistance of counsel during trial, (3) Petitioner was denied his constitutional right to the effective assistance of counsel on direct appeal, (4) Petitioner's statement was obtained based on an illegal arrest and detention, in

2

violation of the right to counsel, in violation of the statutory safeguards provided to

juveniles, and trial counsel was ineffective for failing to raise these suppression issues.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal
> > law, as determined by the Supreme Court of the United
> > States; or
> > (2)     resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

3

federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims previously

4

rejected in state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  Claims # 1, # 2, and # 3.  Right to a public trial/Ineffective assistance of counsel**.

Petitioner first contends that his Sixth Amendment right to a public trial was violated when three of his friends were removed from the courtroom.  In the alternative, Petitioner argues that trial counsel was ineffective for failing to object to the removal of his friends from the courtroom and by failing to assert his right to a public trial.  Petitioner also claims that appellate counsel was ineffective for failing to raise this claim

on his appeal of right.

Respondent contends that Petitioner's public trial claim is waived and/or procedurally defaulted because Petitioner failed to object to the removal of three individuals from the courtroom prior to trial.

"The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The Sixth Amendment public-trial guarantee was created to further that aim. *Id*. (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Id*. The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id*. at 49-50, n. 9.

Although the right to a public trial is a fundamental right, it can also be waived if a habeas petitioner either acquiesces to the closure of the courtroom or fails to object. *See Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009)(citing *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991)("[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed."); *Peretz v. United States*, 501 U.S. 923, 936–37 (1991)(citing *Levine v. United States*, 362 U.S. 610, 619 (1960)). Other circuits have reached the same conclusion. *See U.S. v. Reagan*, 725 F.3d 471, 488-89 (5th Cir. 2013); *cert. den*. 134 S. Ct. 1514 (2014) (defendants waived claim that right to public trial violated by the closing of the

6

courtroom during voir dire, hence, claim unreviewable on appellate review); *U.S. v. Christi*, 682 F.3d 138, 142-43 (1st Cir. 2012)(defendant waived any claim of error in court limiting public access to courtroom during most of jury instructions by counsel's failure to object); *U.S. v. Rivera*, 682 F.3d 1223, 1232 (9th Cir. 2012)(defendant may forfeit the right to a public trial, either by affirmatively waiving it or by failing to assert it in a timely fashion); But *see Walton v. Briley*, 361 F.3d 431, 434 (7th Cir.2004)(holding that habeas petitioner had not waived right to a public trial by failing to object at trial because a right to a public trial is a fundamental trial right which may be relinquished only upon a showing that defendant knowingly and voluntarily waived such a right).

The fact that the denial of the right to a public trial is a structural error does not mean than the claim cannot be waived by Petitioner's failure to object. Although structural errors are presumed to be prejudicial and thus not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default. *See Johnson v. United States*, 520 U.S. 461, 466 (1997)(waived or forfeited structural error subject to plain error review under Fed. R.Crim. P. 52(b)). *See also United States v. Suescun*, 237 F.3d 1284, 1288, n. 12 (11th Cir. 2001)("Structural defects do not absolve a defendant's waiver of a defense or objection."). As noted above, numerous cases have held that the right to a public trial can be waived.

The fact that Petitioner did not on the record expressly agree to the exclusion of the three individuals from the courtroom likewise does not alter this analysis. Although

7

certain fundamental rights of a criminal defendant, such as the right to counsel or whether to plead guilty, cannot be waived by counsel without the express, knowing and voluntary consent of the defendant, *see New York v. Hill*, 528 U.S. 110, 114 (2000), for other rights, "waiver may be effected by action of counsel." *Id*. The Supreme Court has noted that it has "in the context of a broad array of constitutional and statutory provisions, articulated a general rule that presumes the availability of waiver," even when that waiver involves "the most basic rights of criminal defendants." *Hill*, 528 U.S. at 114. Moreover, "the lawyer has-and must have-full authority to manage the conduct of the trial.... Thus, decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Hill*, 528 U.S. at 115.

Various federal circuit courts have held that "[a] defendant's attorney's waiver of the right to a public trial is effective on the defendant." *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006)(citing *United States v. Sorrentino*, 175 F.2d 721, 723 (3rd Cir.1949); *Martineau v. Perrin*, 601 F.2d 1196, 1200–01 (1st Cir. 1979)). The Sixth Circuit in *Johnson v. Sherry*, *supra*, essentially acknowledged that the petitioner's right to a public trial had been waived by counsel's failure to object to the closure of the courtroom. *Id.*, 586 F, 3d at 489. The Supreme Court has yet to hold that an attorney cannot waive his client's right to a public trial. *See Guyton v. Butler*, 490 F. App'x. 331, 333 (11th Cir. 2012). Indeed, the Second Circuit has noted that "[t]here is no clearly established binding precedent [from the Supreme Court] as to either whether personal

8

waiver of the right to a public trial is constitutionally required, or as to whether waiver by counsel requires consultation with a client." *Daughtry v. Greiner*, No. 01–2466, 2002 WL 31819589, p. 1 (2nd Cir. Dec. 16, 2002)(unpublished). Thus, to the extent that Petitioner argues that his public trial claim was not effectively waived because he did not personally waive this right, habeas relief is precluded because of the lack of clearly established Supreme Court precedent regarding whether a defendant must personally waive his public trial right or whether, if the right is to be waived by counsel, there must be consultation with the defendant. *Id*.

Petitioner's failure to object to the removal of individuals from the courtroom prior to trial thus waives federal habeas review of his public trial claim. *Johnson*, 586 F. 3d at 444; *see also Reagan*, 725 F. 3d at 488-89.

In the alternative, Petitioner's public trial claim is procedurally defaulted because his trial counsel failed to object to the exclusion of Petitioner's friends from the courtroom. Petitioner first raised this issue in his motion for relief from judgment. The trial court held that "a constitutional right may be forfeited by a party's failure to timely assert that right." The trial court rejected Petitioner's claim, finding the claim procedurally defaulted and finding that under a plain error analysis, Petitioner "does not explain exactly how the error affected the final result at the trial level." *People v. Durr*, No. 06-000099-01, at * 2 (Wayne County Circuit Court, July 27, 2010).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the

default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The trial judge concluded that Petitioner forfeited review of his public trial claim because of his failure to object and reviewed the claim for plain error. The fact that the judge engaged in plain error review of Petitioner's public trial claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the judge's review of Petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001). The mere fact that Petitioner's public trial claim involves a structural error does not absolve him of the need to establish cause and actual prejudice to excuse the default. *See Ambrose v. Booker*, 684 F.3d 638, 650-51 (6th Cir. 2012). Petitioner's

public trial claim is procedurally defaulted.

In the alternative, Petitioner argues that trial counsel was ineffective for failing to object to the removal of his three friends from the courtroom during his trial.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient

11

performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

In assessing whether a claim of ineffective assistance satisfies the "cause" requirement of *Coleman*, a less stringent standard of review is applied than when reviewing an independent freestanding ineffective assistance of counsel claim pursuant to the deferential standard of review found in 28 U.S.C. § 2254(d). The question for the federal habeas court is not whether the state court's decision was unreasonable, but whether there was an independent Sixth Amendment violation under *Strickland*. Stated differently, the level of scrutiny is the same as would be applied on direct review. *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir.2009)(citing *Ege v. Yukins*, 485 F. 3d 364, 379–80, n. 7 (6th Cir. 2007)). This is because "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id*. at 237 (citing *Joseph*, 469 F.3d at 459). Nonetheless, "[T]he prejudice analysis for the procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this context. '[E]stablishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice.'" *Hall,* 563 F.3d at 237 (quoting *Joseph*, 469 F.3d at 462–63).

Petitioner first raised his ineffective assistance of trial counsel claim in his motion for relief from judgment. The trial court denied this claim finding "[d]efendant's

12

argument does not satisfy the second prong of the *Strickland* test.  The brief filed alongside his motion does not adequately explain how the alleged misconduct on the part of his attorney created any sort of prejudice; he did not move beyond the 'likely' standard and present evidence to suggest that it was probable his case would have been decided differently had it not been for that alleged misconduct."*People v. Durr*, No. 06-000099 -01, at *2 (Wayne County Circuit Court, July 27, 2010).

Although the record does not reflect why defense counsel failed to object when the trial court excluded Petitioner's three friends from attending the trial, a reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he or she did. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011). *See also McClain v. Hall*, 552 F.3d 1245, 1253 (11th Cir. 2008)("[I]t matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel.") (internal quotation marks omitted).  Trial counsel may have believed that the exclusion of Petitioner's friends benefitted Petitioner by not casting Petitioner in a bad light.  Trial counsel may have also have feared that an evidentiary hearing to exclude the three friends could have produced incriminating evidence implicating Petitioner in the disappearance of the witness or in the actual crime.

In addition, the judge at the time of trial clearly indicated that he believed that Petitioner's three friends may have intimidated the witness and excluded them from the

13

courtroom. Because it is clear from the judge's ruling that he believed that there were compelling reasons to exclude Petitioner's friends from the court and most likely would have overruled any objection made by counsel to these exclusions, Petitioner failed to show that counsel was ineffective for failing to object to the removal of his friends from the courtroom. *See Johnson v. Sherry*, 465 F. App'x. 477, 481 (6th Cir. 2012). Because Petitioner failed to show that the judge would have been unable to articulate a valid reason to remove Petitioner's friends from the courtroom had counsel objected, he failed to show that trial counsel was deficient for failing to object to the removal of Petitioner's friends from court.

Moreover, assuming that trial counsel was deficient for failing to object to the removal of Petitioner's friends from the courtroom, Petitioner failed to show that he was prejudiced by counsel's failure to object.

Petitioner argues that because the denial of the right to a public trial is a structural error, prejudice should be presumed. In *Johnson v. Sherry*, 586 F.3d at 447, the Sixth Circuit considered whether trial counsel's performance led to a denial of the petitioner's right to a public trial. The Sixth Circuit remanded the case to the district court for an evidentiary hearing to determine whether counsel's performance was deficient, and thus did not definitively resolve the prejudice issue. A majority of the Sixth Circuit, however, seemed to suggest that if a structural error is shown by counsel's deficient performance, then prejudice should be presumed. *Id.* at 447. However, a later panel of the Sixth Circuit characterized the *Johnson* opinion's suggestion "that prejudice is presumed when

14

the deficient performance results in a structural error" as dicta. *Zimmerman v. Booker*, 517 F. App'x. 333, 337, n. 3 (6th Cir. 2013). Therefore, *Johnson* does not control this Court's decision.

In addition, the majority opinion in *Johnson* was undermined by Judge Kethledge's  dissent in that case, in which he criticized the majority's assertion that prejudice should be presumed because the right to a public trial is a structural guarantee. Judge Kethledge observed that the majority's ruling "drives right past the distinction between a [public trial] claim and a *Strickland* one.  What the majority says is true enough for a [public trial] claim, but Johnson's petition undisputedly turns on a *Strickland* one; and *Strickland* repeatedly and unequivocally says that actual prejudice is required." *Johnson, Id.* 586 U.S. at 449 (citing *Strickland*, 466 U.S. at 693, 694) (Kethledge, J., dissenting).

Judge Kethledge's position has support in the Supreme Court's ineffective assistance of counsel and structural error jurisprudence.  In every case in which the Supreme Court has set forth the circumstances in which prejudice from counsel's deficient performance may be presumed, it has never held that an underlying structural error caused by counsel's performance is a reason for presuming prejudice; instead, only complete actual or constructive denial of counsel or a conflict of interest suffices. *See Wright v. Van Patten*, 552 U.S. 120, 124–25 (2008); *Florida v. Nixon*, 543 U.S. 175, 189–90 (2004); *Bell v. Cone*, 535 U.S. 685, 695–96 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Roe v. Flores–Ortega*, 528 U.S. 470, 482–83 (2000); *Smith v. Robbins*,

15

528 U.S. 259, 287 (2000); *Penson v. Ohio*, 488 U.S. 75, 88 (1988); *United States v. Cronic,* 466 U.S. 658, 659–60 (1984); *Strickland*, 466 U.S. at 692.  Presuming prejudice based upon counsel's failure to object to a structural error would be inconsistent with this precedent, as well as with the *Strickland* court's unequivocal holding that, denial of counsel and "[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

This Court further notes that there is a split in the circuits as to whether prejudice is presumed when the underlying error is structural.  Three circuits, including a majority of the panel of the Sixth Circuit in *Johnson,* suggested or held that prejudice can be presumed where counsel's deficient performance results in a structural error. *Johnson,* 586 F.3d at 447; *Owens v. U.S.*, 483 F.3d 48, 64-65 (1st Cir. 2007)(prejudice presumed where counsel failed to object to the closure of the courtroom for an entire day of trial); *McGurk v. Stenberg*, 163 F.3d 470, 475 (8th Cir.1998)(holding that "when counsel's deficient performance causes a structural error, we will presume prejudice under *Strickland* ").  Two circuits have gone in the opposite direction, requiring a showing of actual prejudice even where the error is structural. *See Purvis v. Crosby,* 451 F.3d 734, 742 (11th Cir. 2006)(requiring a showing of actual prejudice where counsel failed to object to a courtroom closure); *Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir. 2006) (declining to hold that "a structural error alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context").  The Ninth Circuit declined

to determine whether trial counsel's failure to object to the closure of the courtroom

requires a showing of actual prejudice or whether prejudice can be presumed. *See U.S. v.*

*Withers*, 638 F.3d 1055, 1067-68 (9th Cir. 2011). A disagreement among the circuit

courts is evidence that a certain matter of federal law is not clearly established for federal

habeas purposes. *See Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012).

   The Supreme Court's recent decision in *Premo v. Moore*, 131 S.Ct. 733 (2011)

appears to vindicate Judge Kethledge's dissenting opinion in *Johnson*. In *Premo*, the

petitioner had pleaded no contest to felony murder. He subsequently filed a habeas

petition in which he alleged that counsel was ineffective for failing to move to suppress

his coerced confession which had been introduced in violation of *Arizona v. Fulminante*,

499 U.S. 279 (1991). The Ninth Circuit granted habeas relief, holding that the state

court's decision that counsel's failure to move to suppress the statement was not

ineffective was both an unreasonable application of *Strickland* and contrary to

*Fulminante*. *See Premo*, 131 S.Ct. at 738–39.

   The Supreme Court reversed the decision, concluding that the Ninth Circuit erred

by incorporating the standard governing the underlying substantive violation of a

coerced confession set forth in *Fulminate* into the *Strickland* inquiry. The Supreme

Court explained that "*Fulminante* may not be so incorporated into the *Strickland*

performance inquiry," because "*Fulminante*—which involved the admission of an

involuntary confession in violation of the Fifth Amendment—says nothing about the

*Strickland* standard of effectiveness." *Id.* at 743. The Supreme Court also rejected the

17

Ninth Circuit's reliance on *Fulminante* to establish prejudice for the ineffective assistance of counsel claim, opining that "there is no sense in which the state court's finding could be contrary to *Fulminante*, for *Fulminante* says nothing about prejudice for *Strickland* purposes[.]" *Id*. at 744.  Importantly, the Court held that the standard for prejudice based on admission of an involuntary confession set forth in *Fulminante* "cannot apply to determinations of whether inadequate assistance of counsel prejudiced a defendant who entered into a plea agreement," because that is a determination governed by *Strickland*. *Id*.

The Supreme Court in *Premo* thus found error in the Ninth Circuit's incorporation of the prejudice standard governing the underlying error caused by counsel into the *Strickland* prejudice inquiry.

A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F.3d 524, 530-531 (6th Cir. 2001).  A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*  Circuit Court precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* 132 S. Ct. 2148, 2155 (2012).  In the absence of any clearly established federal law from the

18

Supreme Court that a court should presume prejudice when the underlying error is structural, Petitioner is not entitled to the presumption of prejudice on his ineffective assistance of counsel claim.  Moreover, this Court concludes that the Sixth Circuit's holding in *Johnson* was overruled by *Premo*.

Petitioner failed to allege, let alone establish, that he was actually prejudiced by the exclusion of his three friends from the courtroom during his trial.  Because Petitioner failed to show that a different result would have happened had trial counsel objected to the removal of his three friends from the courtroom, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, nor can he use it to establish cause to excuse default on his public trial claim. *Purvis,* 451 F.3d at 743.

Finally, Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner's first and second claims are not meritorious; appellate counsel was not ineffective in the handling of Petitioner's direct appeal.

Moreover, Petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise his first and second claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on Petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on Petitioner's motion for post-conviction relief granted Petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise his first and second claims on Petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)).  There is no point in remanding this case to the state courts to reconsider a case that has been adversely decided on more than one occasion. *Gardner*, 817 F. 2d at 189.  Petitioner is not entitled to habeas relief on his first, second, or third claims.

**B. Claim # 4. The claims involving Petitioner's statement**.

Petitioner contends that his Fourth Amendment rights were violated when the prosecutor introduced evidence of a statement made by Petitioner taken during an illegal arrest, in violation of his right to counsel, and by failure of the officers to comply with the procedural requirements for arresting a minor.  Petitioner also claims trial counsel was ineffective for failing to move for the suppression of his statement.

Petitioner's claim that his confession was the fruit of an illegal arrest is non-

20

cognizable on habeas review.  A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000); *Martin v. Jabe*, 747 F. Supp. 1227, 1231 (E.D. Mich. 1989).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis*, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown*, 638 F. Supp. 2d at

21

812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

The illegal arrest claim was not raised at trial; it was raised and considered on appeal:

> Defendant's first claim that his confession was obtained pursuant to an illegal arrest because it was made without probable cause, is not supported by the evidence. Due to the fact that defendant did not raise this objection at trial, he failed to preserve this issue for appeal, so we review the existing record only for plain error affecting substantial rights.
> *************************************************************
> In this case, Miller testified that she based her arrest of defendant on "several tips that came in" and on the statement of one of defendant's acquaintances, Crystal Hyter. No information regarding the tips was elucidated at trial. Hyter confirmed at trial that she told Miller that she knew defendant from school, had heard from other people that he was involved in the shooting, and heard from defendant that he shot the victim. Hyter was a named informant with personal knowledge of defendant and the shooting.
>
> There is no evidence regarding the identity of the other individuals who supplied the tips to Miller. According to Miller, however, this evidence was corroborated by Hyter's statement. Thus, there was evidence that the information was reliable. While it is not known whether the individuals who made the tips had personal knowledge of the shooting, it is not apparent on the record that Miller lacked the information to support probable cause. On the contrary, defendant's admission of guilt to Hyter together with other evidence obtained by Miller, constituted probable cause to effectuate an arrest of defendant. Therefore, there was no plain error in admitting the statement made pursuant to defendant's arrest.

*People v. Durr*, 2008 WL 3851561, at *2. (internal citations omitted).

The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more than an evidentiary hearing in the trial court.  It also includes corrective action available through the appellate process on direct review of the conviction. *See Pulver v. Cunningham*, 419 F.Supp. 1221, 1224 (S.D.N.Y.1976); *see also Rashad v. Lafler,* 675 F.

3d 564, 570 (6th Cir. 2012)(petitioner had ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004)(petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief).  Because all of the material facts were before the state appellate courts on direct review and the appellate process was not otherwise deficient, Petitioner had a full and fair opportunity to litigate his claim that his confession was the fruit of an illegal arrest.

In any event, Petitioner's arrest was supported by probable cause given that both Crystal Hyter and Laran Pruitt told Officer Miller that Durr admitted to them that he shot the victim. (Tr. 3/6/07 pp. 46-48, 261-62).  Petitioner's statement was obtained following a legal arrest.

Petitioner further claims that his statement was taken in violation of his right to counsel.  The Michigan Court of Appeals rejected Petitioner's claim, finding neither Petitioner nor his mother unequivocally requested the presence of an attorney:

> Defendant was 16 years old at the time of the offense.  He was interrogated in the presence of his mother.  Both defendant and his mother were read and

signed a statement of defendant's *Miranda*[1] rights. Defendant's mother testified at trial as follows: "I ... did ask the detective. I asked her, 'He needs a lawyer, is that not right?' I said, '[H]e needs a lawyer before he should speak.' ... I asked her-I said-'[H]e need[s] a lawyer, right, before he speaks.'" She further testified that Miller said, "No, he's trying to help himself." Defendant's mother was satisfied with this result. Defendant never said anything about a lawyer and continued to answer Miller's questions and both defendant and his mother signed the confession, which was written out by Miller.

*People v. Durr,* No. 277877, 2008 WL 3851561, at *2 (Mich. Ct. App. Aug. 19, 2008).

It is true that once an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  However, the "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452, 459 (1994)(quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)).  The suspect's statement "must unambiguously request counsel." *Id.* 512 U.S. at 459.  Additionally, "[u]nless the suspect actually requests an attorney, questioning may continue." *Id.* 512 U.S. at 462.

The Michigan Court of Appeals did not unreasonably apply clearly established federal law by finding that Petitioner did not clearly and unequivocally invoke his right

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)(footnote original).

to counsel, because fairminded jurists could conclude that Petitioner's mother's passing reference to an attorney was not an unambiguous request to speak with counsel.  Indeed, in *Davis*, the Supreme Court concluded that the defendant's statement "Maybe I should talk to a lawyer" was not an unequivocal request for counsel. *Davis*, 512 U.S. at 462. Likewise, Petitioner's mother's inquiry, "he needs a lawyer, right, before he speaks" was not an unequivocal request for counsel.

Other cases have found similar language to be too equivocal to amount to an unambiguous request to speak to counsel, so as to require the police to cease their interrogation. *See U.S. v. Amawi*, 695 F. 3d 457, 485 (6th Cir. 2012)(defendant's statements during *Miranda* warning, that "I'm going to wait" and asking "is there a lawyer on board" were neither clear nor unequivocal invocation of the right to remain silent or the right to counsel, as would warrant suppression of inculpatory statements made on board jet from Jordan to United States from prosecution for conspiracy to kill and maim persons outside the United States); *Rogers v. Kerns*, 485 F. App'x. 24, 31 (6th Cir. 2012)(habeas petitioner's inquiry after signing his *Miranda* waiver form and immediately before confessing "I can't write this with a lawyer or anybody[?]," was not an unequivocal invocation of the right to counsel); *Cornelison v. Motley*, 395 F. App'x. 268, 274 (6th Cir. 2010)(habeas petitioner's comment "What if I want my lawyer present first?" too ambiguous to require the police to terminate their interrogation, particularly where petitioner proceeded afterward to fill out waiver form and then indicated he wished to speak with the police); *Ledbetter v. Edwards*, 35 F. 3d 1062, 1070 (6th Cir.

1994)(defendant's statement during police interrogation, that "it would be nice" to have an attorney, was too ambiguously worded to require police to stop questioning defendant).

Petitioner's mother testified that rather than requesting an attorney, she asked Miller whether Petitioner needed a lawyer.  Petitioner never said anything about a lawyer and continued to answer Officer Miller's questions.  Moreover, both Petitioner and his mother signed the confession, which was written out by Officer Miller.  Petitioner's statement was not obtained in violation to his right to counsel.

Petitioner failed to establish that his statement to Officer Miller was obtained in violation of *Edwards*.  In light of the foregoing, there was no reasonable probability that a motion to suppress based on an alleged *Edwards* violation would have succeeded. Petitioner was not denied effective assistance by trial counsel's failure to move for the suppression of his statement on this basis. *See Koras v. Robinson*, 123 F. App'x. 207, 210-12 (6th Cir. 2005).

Petitioner next argues that his statement was obtained in violation of statutes and court rules which provide additional safeguards to juveniles.

A violation of state's juvenile rules in obtaining a confession is non-cognizable. *See Strunk v. Martin*, 27 F. App'x. 473, 474 (6th Cir. 2001)(Claim that state court violated state procedural requirements for juveniles by considering murder defendant's confession could not serve as basis for federal habeas relief).

The Michigan Court of Appeals also found no such violation:

26

Because defendant did not object on these grounds at trial, there was no evidence adduced regarding whether these procedures were followed. Miller testified, however, that after she detained defendant, she took him into the juvenile courthouse where he was arrested. No record was made of whether Miller brought defendant before a judge or filed a petition after arresting defendant. Defendant argues that this lack of evidence is sufficient to prove an error requiring reversal. On the contrary, there can be no plain error in the court's admission of defendant's statement in the absence of evidence supporting defendant's claim that the statement was made in violation of a statute and a court rule. Simply put, in the absence of any evidence that there was a violation of a statute or court rule, we cannot grant the relief requested.

*People v. Durr,* No. 277877, 2008 WL 3851561, at *3.

Petitioner alleges that trial counsel failed to raise these suppression issues. Petitioner failed to offer any arguments as to how his statement to Officer Miller was involuntary or why it should have been suppressed.  Because Petitioner failed to identify a legal basis for the suppression of his statement, counsel was not ineffective in failing to move for its suppression prior to trial. *See e.g. Brown v. Mckee*, 231 F. App'x. 469, 475 (6th Cir. 2007).

Moreover, trial counsel did, in fact, challenge the admissibility of Petitioner's statement, albeit on grounds different than the ones suggested by Petitioner.  Trial counsel chose to object to the admission of the statement during trial based on the failure to re-advise Petitioner of his *Miranda* rights prior to the taking of Petitioner's statement. Following the signing of the original advice of rights form, Officer Miller conducted the initial interview which resulted in the arrest of Petitioner.  Miller then ended the interview. Petitioner began crying and then initiated a further discussion which took place within 10 minutes after the return of Petitioner's mother.  The interview ended

27

with the signing of the statement which was initialed by Petitioner and his mother. (Tr. 3/6/07, pp. 137-139, 144-160).  Counsel 's decision to challenge the admissibility of Petitioner's statement mid-trial rather than in a pre-trial motion is a reasonable strategy that defeats Petitioner's claim. *See e.g. Garcia-Dorantes v. Warren*, 769 F. Supp. 2d 1092, 1106 (E.D. Mich. 2011).

Moreover, the fact that trial counsel chose to challenge the admissibility of Petitioner's statement based on the failure to re-advise him of his *Miranda* rights rather than on the alternative grounds suggested by Petitioner did not render counsel's assistance ineffective.

In *Cowans v. Bagley*, 639 F.3d 241, 250 (6th Cir. 2011), the Sixth Circuit ruled that trial counsel was not ineffective for choosing to challenge the search of the petitioner's home on the basis that his parole officer lacked probable cause to search the home, rather than to focus on the validity of the consent given by petitioner's wife to police officers to search the home.  In rejecting this claim, the Sixth Circuit observed:

> [t]hat trial counsel's failure to make an additional (or alternative) Fourth Amendment objection does not fall below an objective standard of reasonableness.  Often an attorney will have several possible arguments available to her and will choose the one she thinks is the most likely to succeed or offers the greatest possible return for her client.  Choosing the ground on which to contest a search is classically the kind of strategic decision that attorneys are hired to make.

*Id.* (*citing Strickland*, 466 U.S. at 690–91).

Trial counsel may very well have concluded that it would be stronger to argue a violation of Petitioner's *Miranda* rights based on the failure to re-administer the *Miranda*

28

warnings after the passage of time rather than challenging the admission of the statement on the grounds advanced by Petitioner.

Trial counsel was not ineffective by failing "to object to the foregoing claimed errors.  Because there were not errors committed, trial counsel's performance was not deficient for failing to object." *Durr,* * 4.  Petitioner's fourth and final claim is without merit.

## IV.  Conclusion

The Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability.

To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable

29

whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

30

## V.  **ORDER**

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of

Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  March 4, 2015

The undersigned certifies that a copy of this
document was served on the attorneys of record
and Randall Durr  by electronic means or U.S.
Mail on March 4, 2015.

s/Linda Vertriest
Deputy Clerk

31